Merrimack,
No. 5756.

MECHANICKS NATIONAL BANK *& a.*

*v.*

CLYDE R. PARKER, *Sheriff & a.*

Argued May 8, 1968.
Decided May 29, 1968.

*Robert D. Branch* and *Harold E. Ekstrom* ( *Mr. Ekstrom* orally ), for the plaintiffs Mechanicks National Bank and Donna Crecch.

*Upton, Sanders & Upton* and *Ernest T. Smith III* ( *Mr. Smith* orally ), for the defendant sheriff.

*Paul A. Rinden* ( by brief and orally ), for the intervenor, Public Finance Corporation of Laconia.

DUNCAN, J. Replevin of a 1964 Pontiac automobile by a mortgagee and mortgagor of the same, against a sheriff who had possession of the vehicle under an attachment made in an action brought by the intervenor herein against a third party in

whose name the vehicle was registered at the time of attachment. Trial by the Superior Court ( *Griffith,* J. ). Verdict for the defendant sheriff in the sum of $1,271.75. All questions of law presented by the exceptions of the plaintiffs to certain findings and rulings and to the verdict were reserved and transferred by the Presiding Justice.

In 1965 plaintiff Donna Creech resided in Epsom with her mother and older brother Crawford Creech. She was employed in Concord, and undertook to purchase the automobile in question at private sale from a party in Franklin. To finance the purchase, she borrowed $1,800 from the plaintiff bank giving her installment note in the sum of $2,080.44, and a security agreement or chattel mortgage of the automobile both under date of June 4, 1965. A financing statement was filed with the town clerk of Epsom under date of June 7, 1965. Since the plaintiff had no operator's license, her brother Crawford drove the car for her when she had occasion to use it, going to and from work in Concord or for other purposes.

Crawford held the registration and insurance for a 1957 Pontiac and on June 4, 1965, he had this registration transferred to the 1964 Pontiac. On June 7, 1965, effective as of June 4, his comprehensive liability insurance was transferred to the same vehicle. The policy was made payable to the plaintiff bank as its interest should appear, and was deposited with the bank.

In September, 1965 Donna Creech moved to Concord. No longer requiring the use of the automobile, she left it with her brother, who later took it to Massachusetts with him. In January 1966, he registered it in Massachusetts, and before March 10 he returned to his mother's home in Epsom, where his wife was living. Crawford was indebted to the intervenor by reason of a personal loan which antedated the purchase of the Pontiac. On March 11, 1966 the vehicle was attached by the defendant sheriff in an action by the intervenor against Crawford.

On March 31, 1966 the vehicle was replevied by the plaintiffs herein, and subsequently sold.

Payments which the plaintiff Donna testified that she made to the plaintiff bank in July and August 1965, prepaid the note to July 1966. The proceeds of the sale of the Pontiac were used to satisfy the indebtedness to the bank, by the payment of $1,271.75 on May 20, 1966.

The Trial Court found that the plaintiff Donna Creech gave to her brother Crawford "all the incidents of ownership [ of the

automobile,] and that as between her and an innocent third party assuming ownership in Crawford Creech she did not have a right of possession at the time of the replevin writ." It further found that the bank would be entitled to judgment if it was entitled to possession at the time of replevin. Subject to the plaintiff's exception the Court further found however that the bank did not have a right to possession and was "purely a nominal party to the action . . . that they no longer have any interest in the action, their loan on the Pontiac having been paid in full."

The verdict returned was as follows: "Verdict for defendant in the amount of $1,271.75 on the basis that Plaintiff Mechanicks National Bank had no right of possession at the time of replevin and no interest in case at time of trial. Verdict against Donna Creech, Plaintiff, above on ground that she gave Crawford Creech all incidents of ownership."

The security agreement held by the bank provided that its debtor would be in default in the event of attachment of the collateral securing the loan; and that upon default the bank should have the remedies of a secured party under the Uniform Commercial Code. See RSA 382-A:9-503, 504.

It follows that when the automobile was attached on March 11, 1966, the bank as holder of the unpaid note had a right to possession which was effective on March 31, 1966 when the automobile was replevied by the plaintiffs. Although by the time of trial the vehicle had been sold and the proceeds applied to satisfaction of the debt, the bank continued to have an "interest in the case" by virtue of its obligation as principal on its bond to the sheriff who replevied the vehicle from the defendant sheriff herein, conditioned to prosecute the action and pay any damages awarded against the bank. RSA 536:4.

Accordingly the verdict entered by the Trial Court, and the findings that the bank had no right to possession, or interest in the replevin suit must be set aside.

The intervenor argues that the finding that the bank had no right to possession is supportable because of the finding that Donna Creech gave her brother Crawford "all the incidents of ownership," so that he could be found to be the owner of the vehicle in every respect "except for the formalities of arranging the financing from the bank." However, the title of Donna Creech, at the time of these "formalities," has not been questioned. On June 4, 1965 the bank draft evidencing the loan of $1,800 was endorsed by her as payee to a Meredith bank, holder of a prior

lien upon the automobile given by the vendor, who also endorsed the check. As a result of the transaction with Donna Creech the plaintiff bank acquired a purchase money security interest under the Uniform Commercial Code. RSA 382-A:9-107. In order to perfect its interest, the bank was required to file a financing statement, since the collateral was a "motor vehicle required to be licensed." RSA 382-A:9-302 ( 1 ) ( c ). See Hollman, The Impact of the Uniform Commerical Code on Consumer Goods Financing in New Hampshire, 5 N.H. B. J. 181, 190. The financing statement was duly filed on June 7, 1965.

It should be noted that at the time in question New Hampshire had no certificate of title law which could be controlling under RSA 382-A:9-302 ( 3 ) ( b ) and ( 4 ). See *Id.,* N. H. Comments, *p.* 529; RSA 269-A:21 ( supp ), effective September 1, 1968. Hence we express no opinion as to the effect of this statute if it were applicable.

The fact that Crawford Creech later received certain "incidents" of title, and that the vehicle was registered in his name, did not operate to deprive the bank of its validly constituted lien. *Bosen* v. *Larrabee,* 91 N. H. 492. See *Grimes* v. *Labreck,* 108 N. H. 26; *Bolton-Swanby Co.* v. *Owens,* 201 Minn. 162; Annot. 18 A.L.R. 2d 813, 845.

The question remains, whether a new trial is required. The intervenor enjoys no protection as a buyer under the Uniform Commercial Code since as an attaching creditor of Crawford Creech, it did not qualify as a "buyer in ordinary course of business," and its attachment was made after the filing of the financing statement by the bank. RSA 382-A:9-307. *National Shawmut Bank* v. *Jones,* 108 N. H. 386. On the contrary, by express provision of the uniform code, the perfected purchase money security interest of the bank had priority over the "conflicting security interest in the same collateral" which the intervenor acquired by virtue of its attachment made subsequent to the filing of the bank's financing statement. RSA 382-A:9-312( 4 ).

Since the collateral held by the bank has been sold in satisfaction of the indebtedness which it secured, no occasion arises for further proceedings in the action before us. The plaintiffs' exceptions are sustained, and the order is

*Judgment for the plaintiffs.*

GRIFFITH, J., did not sit; the others concurred.